IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| HASSAN M. AHMAD ) | |
|     Debtor ) | Case No. 14-14380-RGM |
| ) | Chapter 13 |

## MOTION TO OVERRULE MOTION TO QUASH SUBPOENA *DUCES TECUM* AND FOR FEES

Shamsiya Shervani ("Ms. Shervani"), a creditor of the Debtor herein, by and through her undersigned counsel, moves this Court to overrule the Motion to Quash the subpoena duces tecum issued herein to Bernard J. DiMuro and the law firm of DiMuro Ginsberg and, in support thereof, states as follows:

Debtor, Hasan M. Ahmad, filed this Chapter 13 proceeding for the purpose of preventing a pending legal malpractice claim filed by Ms. Shervani from being tried in the Fairfax Circuit Court. Debtor had been retained to represent Ms. Shervani in a personal injury claim in Virginia, though not licensed in Virginia, and having little to no experience with the filing of personal injury claims. Indicative of the Debtor's complete lack of competence to handle the claim is the fact that Debtor did not have even have the most basic and fundamental knowledge of the 2-year statute of limitations in Virginia for such claims and, as a result, failed to file suit on Ms. Shervani's behalf before the expiration of the limitations period. There is no issue of liability (Debtor's counsel admitted such at the hearing of February 25th); the only issue is the amount of damages to which Ms. Shervani is entitled. As Debtor was practicing law without malpractice insurance, Ms. Shervani's only source of recovery is the Debtor, personally.

*Robert L. Vaughn, Jr., VSB 20633*
*O'Connor & Vaughn LLC*
*11490 Commerce Park Dr., #510*
*Reston, VA 20191*
*T - 703-689-2100*
*F - 703-471-6496*

In his initial Plan, for which confirmation was denied, Debtor proposed to pay 2% of his unsecured debts, and made no provision for payment to Ms. Shervani. In his Schedules, Debtor claims minimal assets, all of which he asserts to be exempt from claims of creditors.

Initially, it is to be noted that Mr. DiMuro filed the instant Motion on behalf of the Debtor, identifying himself as counsel for the Debtor. However, as Mr. DiMuro is well aware, no order authorizing the debtor to engage other counsel has been entered. In fact, such a motion has previously been denied. This is the second substantive filing made by Mr. DiMuro at a time when he has not been authorized by this Court to represent the Debtor. As such, this filing is both a nullity and is improper. Mr. DiMuro attempts to avoid the prohibition by suggesting that he is not billing the Debtor for these services–yet states very clearly that he reserves the right to seek payment retroactively. Notwithstanding Mr. DiMuro's efforts to have it both ways, he misses the point: the issue is not payment, the issue is the lack of authorization to serve as counsel for the Debtor. Moreover, as addressed further below, there remains a question as to whether Mr. DiMuro is a creditor of the Debtor, which is one of the reasons for the issuance of the subject subpoena.

According to his Schedules, Debtor claims that his current monthly income is $8,200 and that his monthly expenses are $8,002, leaving a total of $198 for the funding of his Chapter 13 Plan. Debtor claimed income (inclusive of his Wife's income) in 2013 of $50,190 and in 2014 of $84,000. Thus, Debtor had little, if any unallocated funds in 2013 and 2014 with which to pay additional expenses, such as attorney's fees to Mr. DiMuro. Nonetheless, in his presentation to this Court on February 25th, Debtor's counsel stated that Debtor had "paid" $18,000 to Mr. DiMuro–with the emphasis on "paid" versus how much was actually billed. Given that Mr. DiMuro's office claimed $6,000 in fees had been incurred very early on in the state court proceedings with regard to only one simple motion (ironically, a motion to quash), Ms. Shervani is skeptical of the accuracy of the Debtor's representation.

In an effort to ascertain the accuracy of the information reported by the Debtor, Ms. Shervani caused the subject subpoena *duces tecum* to be issued to Mr. DiMuro's office. The scope of the subpoena is limited to information that would disclose the financial terms of the litigation, how much was billed, how much was paid, and by whom. Instead of responding substantively to the subpoena, Debtor, through Mr. DiMuro, employs a wholesale approach in an effort to avoid production of any and all documents. Those contentions are addressed in turn:

1. <u>Retention agreement with Hasan Ahmad and/or any document memorializing the terms of such retention.</u>

While acknowledging that retention agreements are not generally considered to be privileged, Mr. DiMuro goes on to assert that the subject agreement is not discoverable "to the extent it contains confidential communications regarding the representation." Contrary to the requirements of F.R.Civ.P. 45(e)(2) however, counsel makes no effort whatsoever to articulate what "confidential communications" are in the retainer agreement. This contention is purely dilatory in nature. The other objection is that the retainer agreement is not relevant–a contention that is specious on its face. The terms and conditions of the retention go directly to what amounts were paid and to whether Mr. DiMuro's firm is a creditor of the debtor.

2. <u>Any and all billing statements submitted to Hasan Ahmad, either directly or indirectly, for legal services</u>

Similarly, Debtor's counsel only makes a passing reference to this portion of the request by stating that they "may also permit the gleaning of work product by Mr. DiMuro and his firm." Again, there is no effort to comply with the requirements of F.R.Civ.P. 45(e)(2). Moreover, these are the exact same records that Mr. DiMuro would be required to produce to this Court and the Trustee if he is ultimately authorized to serve as counsel for the Debtor. Ms. Shervani could care less about Mr. DiMuro's trial strategies (they are readily discernible in any event); what is sought

is information about what has been billed and to whom, which again goes directly to whether Debtor's filings are accurate and whether Mr. DiMuro is a creditor.

    3. <u>Any and all invoices, bills, and/or similar statements for costs incurred related and/or pertaining to Hasan Ahmad, either directly or indirectly, including but not limited to, filing fees, and fees for service of documents (inclusive of fees for private process service of subpoenas duces tecum)</u>

As best as Ms. Shervani can tell from the Motion to Quash, the objection to this portion of the subpoena is the same as to No. 2. Accordingly, Ms. Shervani incorporates her response thereto.

    4. <u>Evidence of any and all payments made by and/or on behalf of Hasan Ahamad for services rendered and/or costs incurred</u>

The sole contention regarding this portion of the request is that it is not relevant. Not only is that not a proper basis for a Motion to Quash as discovery, it is abundantly clear that payment of invoices is extraordinarily relevant to discerning the accuracy of the Debtor's statements, whether all sources of income needed to fund a plan have been disclosed, and whether Mr. DiMuro is, in fact, a creditor.

    5. <u>Time records and/or other documents which memorialize the nature and extent of the legal services provided to and/or on behalf of the Debtor.</u>

Debtor's counsel's contention with regard to the foregoing are a repetition, albeit more vociferous, of the privilege argument. Billing records are just that–records of the services provided and time expended. They are the base documents for the billing statements and will reflect the amount of time expended. Those records may or may not coincide with the actual bills themselves. For example, it may show that a certain amount of services were "written off" in exchange for something. Again, Ms. Shervani has no interest in Mr. DiMuro's trial strategy, nor does this request go to that issue. If there is a contention that a portion of a time record is confidential, then Mr. DiMuro can redact that information and indicate on his privilege log the nature of the information redacted.

-4-

<u>Responding to the subpoena imposes no undue burden on Mr. Dimuro's Office</u>.

Counsel also makes a generalized argument that replying to the subpoena is an undue burden. However, once again, no effort is made to suggest why that is the case. To the contrary, all of the requested documents are undoubtedly readily available to counsel; they are maintained in the ordinary course of counsel's business. It is submitted that more time was expended in preparing the Motion to Quash that would have been required to provide the requested documents.

Within this contention, counsel suggests that the information requested is available through discovery in the adversary proceedings. If that is the case, then the contention that the subpoena request seeks information that is privileged, irrelevant and unduly burdensome is wholly specious; either the information is discoverable or it is not. More to the point, this request has nothing to do with the adversary proceedings; it does directly to the accuracy of the representations that have been made in this Court.

Counsel also suggests that a ruling should be made on Debtor's Motion to Employ him as counsel before a determination is made on the subpoena request. That is completely backwards, as repeatedly stated, the issue is the accuracy of the Debtor's filings and whether Mr. DiMuro is and/or is not a creditor of the Debtor.

<u>Discussion regarding the subpoena</u>.

In another ironic twist, counsel asserts that some communication should have been made before the subpoena was issued in an effort to narrow the scope of the request. At the same time the foregoing assertion is made, without any previous discussion of any kind, and after waiting until only 2 days before the requested documents were due, counsel files the instant Motion to Quash objecting to the production of even one scrap of paper. If counsel believed as is contended in his motion, a phone call should have been made to the undersigned in an effort to resolve those contentions before the time and effort was undertaken to file the Motion to Quash. It is likely that

-5-

the time and expense of drafting the Motion to Quash exceeded the time and effort it would have taken to respond to the subpoena itself.

As detailed above, there clearly is no undue burden being imposed by the subject request–especially given counsel's statement that such information "easily can be sought after in discovery in the pending adversary proceeding, or in a properly limited Rule 2004 exam." Counsel's claims of privilege are vague and generalized and show no effort to meet the requirements of F.R.Civ.P. 45(e)(2). The claims of relevancy are wholly without merit.

It is submitted that there is no adequate excuse for counsel to refuse to comply with the subject subpoena. As such, F.R.Civ.P. 45(g), Ms. Shervani should be reimbursed for all of her attorney's fees and costs incurred in responding to the subject Motion to Quash.

                                            **Shamsiya F. Shervani**
                                            *By Counsel*

**O'CONNOR & VAUGHN LLC**
Robert L. Vaughn, Jr., VSB # 20633
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
Email: rvaughn@oconnorandvaughn.com

By      /s/ Robert L. Vaughn, Jr.
Robert L. Vaughn, Jr.
*Counsel for Shamsiya Shervani*

Certificate of Service

I hereby certify that on February 27, 2015, I electronically filed the foregoing Motion to Overrule with the Clerk of the Court using the CM/ECF system, which will cause notification of such filing to be sent to all counsel of record.

                                            /s/ Robert L. Vaughn, Jr
                                            Robert L. Vaughn, Jr.